IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TBB CRESCENT PARK DRIVE, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| WINT REAL ESTATE, LLC, | § § § | |
| *Defendant*. | § | |

## ORIGINAL COMPLAINT

Plaintiff TBB Crescent Park Drive, LLC ("TBB") files this Original Complaint against Defendant WINT Real Estate, LLC, and respectfully shows the Court as follows:

## PARTIES

1. TBB is a Delaware limited liability company. The sole member of TBB is The Bancorp Bank, N.A., a nationally chartered banking association with its main office located in Sioux Falls, South Dakota.

2. Defendant WINT Real Estate, LLC ("WINT" or "Purchaser") is a Delaware limited liability company with its principal place of business at 2600 Kelly Road, Suite 100, Warrington, Pennsylvania 18976. Upon information and belief, the sole member of WINT is Windtree Therapeutics, Inc., a Delaware corporation with its principal place of business in Warrington, Pennsylvania. WINT has no registered agent for service of process in Texas, despite transacting business in Texas. Therefore, WINT may be served through the Texas Secretary of State as a statutory agent under Section 5.251 of the Texas Business Organizations Code.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because TBB and WINT are citizens of different states for jurisdictional purposes, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

4. More specifically, the parties here are limited liability companies with completely diverse citizenship. For purposes of 28 U.S.C. § 1332, "citizenship is determined by the citizenship of 'all of its members.'" *SXSW, L.L.C. v. Federal Ins. Co.*, 83 F.4th 405, 407-08 (5th Cir. 2023) (citing *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1090 (5th Cir. 2008)). The sole member of TBB is The Bancorp Bank, N.A., which is a citizen of South Dakota because its main office is located in that state. *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 216 (2d Cir. 2016) ("[F]or purposes of subject matter jurisdiction, a national bank is a citizen only of the state in which its main office is located."). Upon information and belief, the sole member of WINT is Windtree Therapeutics, Inc., which is a Delaware corporation and, therefore, a citizen of Delaware. Accordingly, complete diversity exits.

5. This Court has personal jurisdiction over WINT. WINT has established well more than minimum contacts with the State of Texas, these contacts are such that WINT can reasonably anticipate being haled into this Court, and TBB's claims in this action arise out of and/or relate to WINT's contacts with Texas. Moreover, WINT consented to personal jurisdiction in Texas under Section 16.5 of the purchase and sale agreement at issue in this action.

6. Venue is proper in the Houston Division of Southern District of Texas pursuant to 28 U.S.C. §1391 and because the events or omissions giving rise to claims occurred, and the property that is subject of this action is located, in Harris County, Texas. Additionally, WINT agreed under Section 16.5 of the purchase and sale agreement at issue that any litigation commenced regarding the agreement shall be proper in Harris County, Texas.

**FACTUAL BACKGROUND**

A.  **The Property and Purchase and Sale Agreement**

7.  TBB is the owner of a multifamily apartment complex located at 11755 Southlake Drive, Houston, Texas 77007 (the "Property").

8.  On June 28, 2024, TBB and Way Maker Growth Fund, LLC ("Way Maker") entered into a Purchase and Sale Agreement (as amended, the "Agreement"), pursuant to which Way Maker agreed to purchase the Property from TBB for $43,027,284.00.[1]

9.  Way Maker later assigned its rights, obligations, and liabilities under the Agreement to WINT through an Assignment and Conditional Assumption Agreement (the "Purchaser Assignment Agreement") dated as of April 19, 2025.

10. Section 3.2 of the Agreement required Purchaser to deposit certain amounts with the Escrow Holder (as that term is defined in the Agreement), the sum of such deposits being defined as the "Earnest Money." Initially, Purchaser agreed to deliver to the Escrow Holder a total of $500,000.00 through the following payments: (i) $125,000.00 on July 16, 2024; (ii) $125,000.00 on August 29, 2024; (iii) $125,000.00 on October 14, 2024; and (iv) $125,000.00 on November 28, 2024.

11. Pursuant to Section 6.1 of the Agreement, the parties initially agreed to a closing date "on or before December 20, 2024," with "TIME BEING OF THE ESSENCE." Further, the Agreement also contained a supplemental "time is of the essence" provision in Section 16.14. That provision provides: "Time is important to both Seller and Purchaser in the performance of this Agreement, and both parties have agreed that time is of the essence with respect to all dates set forth in this Agreement, including the Closing Date."

---

[1] A copy of the Agreement is attached hereto as Exhibit 1.

12. Accordingly, the parties also acknowledged and agreed in Section 11.3 of the Agreement that any failure by Purchaser to fulfill its obligation to consummate the closing by the agreed upon closing date "shall constitute an immediate default":

> (a) Purchaser shall be in default hereunder upon the occurrence of any one or more of the following events.
>
> …
>
> (ii) Purchaser shall fail to meet, comply with or perform in any material respect any covenant, agreement, or obligation on its part required, within the time limits and in the manner required in this Agreement, or, if no such time limits are set forth, within ten (10) days after notice from Seller of such failure, for any reason other than a Permitted Termination, except that notwithstanding the foregoing, it shall constitute an immediate default if Purchaser fails to fulfill its obligation to timely consummate the Closing as and when required hereunder.

13. Purchaser granted to TBB the contractual right, in the event of a default by Purchaser under Section 11.3(b) of the Agreement, to terminate the Agreement and retain all of the Earnest Money "actually deposited and any interest thereon…."

**B.  The Amendments and Additional Earnest Money**

14. Following the execution of the Agreement in January 2024, TBB and Way Maker entered in a First Amendment to Purchase and Sale Agreement dated as of December 19, 2024 (the "First Amendment") and a Second Amendment to Purchase and Sale Agreement dated as of March 25, 2025 (the "Second Amendment").[2]

15. The terms of both the First Amendment and the Second Amendment extended the original closing date and increased the amount of the earnest money. Specifically, through the First Amendment, the parties extended the closing date to March 21, 2025, and Purchaser made an additional Earnest Money deposit in the amount of $1,100,000.00. Through the Second

---

[2] Copies of the First Amendment and the Second Amendment are attached hereto as Exhibits 2 and 3, respectively.

Amendment, the parties extended the closing date to May 23, 2025, and Purchaser made an additional Earnest Money deposit in the amount of $1,400,000.00.

16. As previously stated, on April 19, 2025, Way Maker and WINT entered io the Purchaser Assignment Agreement, whereby Way Maker assigned its rights, obligations, and liabilities under the Agreement to WINT.[3]

17. TBB and WINT subsequently executed a Third Amendment to Purchase and Sale Agreement dated as of May 23, 2025 (the "Third Amendment").[4] Under Section 1 of the Third Amendment, the parties agreed to extend the closing date to May 30, 2025 (the "Closing Date"). The parties acknowledged and agreed that time remained of the essence:

> (a) The first sentence of Section 6.1 of the Original Agreement, as amended by the First Amendment and the Second Amendment, is hereby deleted and replaced with the following: "The Closing shall occur on or before 4:00 p.m. prevailing Eastern Time on May 30, 2025 ("**Closing Date**"), TIME BEING OF THE ESSENCE, through an escrow with the Title Company, unless the parties mutually agree in writing upon another place or another earlier date."

18. As documented in Section 1(b) of the Third Amendment, Purchaser was given the option to extend the Closing Date up to two times, with each extension being for 30 days, by making a $1,000,000 payment of additional Earnest Money per each extension on or before the Closing Date. However, Purchaser did not exercise the option to extend the Closing Date to a date after May 30, 2025, and Purchaser was obligated under the Agreement to close by that date.

C.   **Purchaser's Default and Wrongful Objection to Release of Earnest Money**

19. Purchaser failed to meet its obligation to close on the sale of the Property by the Closing Date. Accordingly, TBB delivered written notice to Purchaser on May 30, 2025, notifying Purchaser that it was in default under the Agreement.

---

[3] A copy of the Purchaser Assignment Agreement is attached hereto as Exhibit 4.

[4] A copy of the Third Amendment is attached hereto as Exhibit 5.

20. Despite having been notified of its default, Purchaser made no effort to cure its default. And while TBB and WINT discussed the possibility of a further amendment to the Agreement, they did not reach any agreement regarding such an amendment.

21. By letter dated June 24, 2025, TBB notified Purchaser that it was exercising its contractual right to terminate the Agreement in accordance with Sections 5.2 and 11.3 of the Agreement. By that same letter, TBB requested release of the Earnest Money to TBB.

22. On June 26, 2025, Purchaser sent a letter objecting to the release of the Earnest Money to TBB. Purchaser provided no legal or factual basis for such objection; instead, Purchaser simply stated that it "objects to the release of any or all of the Earnest Money to Seller pursuant to the [June 24, 2025] letter or otherwise."

23. On June 30, 2025, TBB demanded that Purchaser withdraw its objection to the release of the Earnest Money and take no further action to interfere with the release of those funds to TBB. Because Purchaser refused to do so, TBB is now forced to seek relief from this Court.

## **COUNT I – DECLARATORY JUDGMENT**

24. TBB repeats and realleges the preceding allegations as if fully set forth herein.

25. TBB brings this action for declaratory relief under Federal Rule of Civil Procedure 57 and 28 U.S.C §§ 2201 and 2202.

26. The Agreement is a valid and binding contract between TBB and WINT.

27. As described herein, there is a current and actual controversy between TBB and WINT concerning the Agreement.

28. As a result of the conduct described herein, TBB seeks a declaration from the Court concerning the parties' rights and obligations under the Agreement. Specifically, TBB seeks the following declarations from this Court:

<ol type="a">
<li>Purchaser's failure to close the transaction contemplated under the Agreement by 4:00 p.m. Eastern Time on May 30, 2025 constituted event(s) of default under Sections 5.2 and 11.3 of the Agreement;</li>
<li>TBB validly terminated the Agreement on June 24, 2025;</li>
<li>TBB is entitled to receive all of the Earnest Money deposited by Purchaser under the Agreement and any interest thereon; and</li>
<li>WINT has no valid objection to the release to TBB of all of the Earnest Money deposited by Purchaser under the Agreement and that WINT has no interest in or claim to such Earnest Money.</li>
</ol>

29. Declaratory judgment is appropriate because such relief would fully and finally resolve the parties' dispute about the meaning and requirements of the Agreement and the disposition of the Earnest Money.

**ATTORNEYS' FEES**

30. Because of Purchaser's wrongful actions, TBB has been compelled to employ the law firm of Troutman Pepper Locke LLP to prepare and file this Original Complaint. TBB has incurred the responsibility of paying this law firm reasonable attorneys' fees for its services. TBB seeks to recover its attorneys' fees from Purchaser as authorized by 28 U.S.C. § 2202 and Section 16.16 the Agreement, and from any other statutory or common law source affording TBB the same or similar relief.

**CONDITIONS PRECEDENT**

31. All conditions precedent to these claims have been performed, have occurred, or have been waived.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, TBB prays that Purchaser be cited to appear and answer herein and that, upon entry of final judgment, this Court grant TBB the following relief:

a) A judgment and declaration that Purchaser's failure to close the transaction contemplated under the Agreement by 4:00 p.m. Eastern Time on May 30, 2025 constituted a default under Sections 5.2 and 11.3 of the Agreement;

b) A judgment and declaration that TBB validly terminated the Agreement on June 24, 2025;

c) A judgment and a declaration that TBB is entitled to receive all of the Earnest Money deposited by Purchaser under the Agreement and any interest thereon;

d) A judgment and declaration that WINT has no valid objection to the release to TBB of all of the Earnest Money deposited by Purchaser under the Agreement and that WINT has no interest in or claim to such Earnest Money;

e) A judgment awarding TBB its attorneys' fees and costs of court; and

f) All other and further relief, at law or in equity, to which TBB is entitled.

Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Elizabeth M. Guffy*
Elizabeth M. Guffy
*Attorney-in-Charge*
State Bar No. 08592525
Southern District Number: 9101
elizabeth.guffy@troutman.com

Ryan B. Burns
State Bar No. 24116149
Southern District Number: 3471171
ryan.burns@troutman.com

Troutman Pepper Locke LLP
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone: (713) 226-1200
Facsimile: (713) 223-3717

**ATTORNEYS FOR PLAINTIFF TBB CRESCENT PARK DRIVE, LLC**